IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| EUGENE J. NELSON and LISA J. NELSON, as Parents and Next Friends of C.N., a Minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLES CITY COMMUNITY SCHOOL DISTRICT,<br><br>Defendant. | No. C15-2074<br><br>ORDER REGARDING REQUESTS FOR ADMISSIONS |

This matter comes before the Court on the Motion to Determine Sufficiency of Answers to Requests for Admissions Directed to Defendant (docket number 11) filed by the Plaintiffs on August 1, 2016, the Resistance (docket number 12) filed by the Defendant on August 5, and the Reply (docket number 15) filed by the Plaintiffs on August 15. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## I. PROCEDURAL HISTORY

On August 11, 2015, Plaintiffs Eugene J. Nelson and Lisa J. Nelson (collectively, "the Nelsons"), acting as parents and next friends of C.N., a minor, filed a complaint alleging a violation of Section 504 of the Rehabilitation Act of 1973. Plaintiffs claim Defendant Charles City Community School District ("the School") "failed to make reasonable accommodations to enable C.N. to receive education free from discrimination based upon her disabilities." The School filed an answer on October 14, 2015, generally denying the material allegations.

On December 21, 2015, the Court adopted a proposed Scheduling and Discovery Order submitted by the parties. Among other things, the parties agreed to an August 22, 2016, deadline for completion of discovery, with dispositive motions to be filed not later

than September 23, 2016. The trial ready date is January 23, 2017, with the trial date not yet established.

## II. BACKGROUND

According to the complaint, C.N. was in the 9th grade at the Charles City Community School District during the 2013-2014 school year. C.N. suffers from depression and polycystic ovarian syndrome. On April 28, 2014, there was an incident on a school bus where C.N. was pushed and fell to the floor. This incident "embarrassed and humiliated" C.N. and she "did not want to return to school following that incident." Her preexisting condition worsened at the same time.

School officials met with the Nelsons and C.N. about her absence from school. In May 2014, the School contacted the county attorney regarding the "truancy issue." "Truancy mediations" followed in which the School, the Nelsons, and C.N. "discussed ways to get C.N. back to school."

Acting on C.N.'s behalf, Lisa Nelson applied to the Iowa Virtual Academy, an online educational service of the Clayton Ridge Community School District. On July 26, 2014, the Nelsons filed an application for open enrollment from the Charles City School District to the Clayton Ridge School District in expectation of C.N.'s attendance at the Iowa Virtual Academy. Charles City School denied the request, however, because it came after the March 1, 2014, statutory deadline for such applications. Following an unsuccessful appeal to the School Board, the Nelsons appealed to the Iowa Board of Education, which reversed the School's denial of C.N.'s open-enrollment application.

## III. DISCOVERY

As part of their pretrial discovery, the Nelsons served the School with 56 requests for admissions. The School served its response on June 20, 2016.[1] In their instant motion,

---

[1] A copy of the School's responses to the Nelsons' request for admissions was attached to the instant motion as Exhibit 1. (*See* docket number 11-3).

2

the Nelsons ask the Court to order the School to more fully respond to Request for Admission Nos. 13-16, 18, and 20.

Request for Admission Nos. 13-16 apparently pertain to a meeting between school officials, the Nelsons, and C.N. on May 22, 2014. In a "Proposed Decision" dated January 20, 2015, Administrative Law Judge Nicole M. Proesch described the meeting as follows:

> On May 12, 2014, C.N. was notified that she had been referred to the Floyd County Attorney's Office for criminal truancy proceedings. The parties attempted truancy mediation on May 22, 2014. Lisa and the school discussed alternative options such as attending the Carrie Lane Alternative High School; however, Lisa was advised that C.N. wasn't old enough to attend. **No one talked to Lisa about an online program available at Charles City. Instead the district insisted C.N. had to attend the brick-and-mortar school. As part of Truancy Mediation Agreement C.N. agreed to obtain a mental health evaluation, attend summer school from June 9th through June 27th, and attend subsequent mediations. Lisa was supposed to receive information about summer school in the mail and she never did.** Lisa and C.N. continued to have truancy mediation meetings on June 30th, one in July, and one in August, until Assistant County Attorney withdrew the truancy action while the open enrollment issues were pending.

Proposed Decision of ALJ Proesch at 3 (docket number 11-4 at 3) (emphasis added).

In Request for Admission Nos. 13-16, the Nelsons ask the School to admit the following:

    13. During the truancy mediation proceedings, no one talked to Plaintiff Lisa Nelson about an online program available through the Charles City Community School District.

    14. Instead, the District insisted C.N. had to attend the brick-and-mortar school

3

15. As part of the Truancy Mediation Agreement, C.N. agreed to obtain a mental health evaluation, attend summer school from June 9 through June 27, 2014, and attend subsequent mediations.

16. Plaintiff Lisa Nelson was supposed to receive information about summer school in the mail, but she never did.

As shown above, the Nelsons' requests for admissions track ALJ Proesch's findings of fact almost word-for-word.

Request for Admission Nos. 18 and 20 apparently refer to a meeting between school officials and Lisa Nelson in July 2014. (It is unclear to the Court whether C.N. attended the July 2014 meeting.) In her Proposed Decision, ALJ Proesch described the meeting as follows:

> **At the mediation in July 2014, Larry Wolfe, the assistant principal ("AP Wolfe") and Josh Johnson, the new high school principal ("Principal Johnson") attended and encouraged Lisa and C.N. to apply to the Iowa Connections Academy ("ICA") at CAM Community School District ("CAM").** Lisa testified that they thought the online school would be a good idea for C.N. because of her testing out. Lisa also testified that Assistant Principal Wolfe wrote a letter to help her get in to the online school. Lisa purchased a laptop and internet connection so C.N. could attend. **Neither AP Wolfe, nor Principal Johnson provided her any information about an online program at Charles City.**

Proposed Decision of ALJ Proesch at 4 (docket number 11-4 at 4) (emphasis added).

In Request for Admission No. 18, the Nelsons ask the School to admit that school officials "encouraged Plaintiff Lisa Nelson and C.N. to apply to the Iowa Connections Academy through the CAM Community School District." Request for Admission No. 20 asks the School to admit that "at no time during the truancy mediation process" did school officials provide Lisa Nelson or C.N. "with any information about an online program through the Charles City Community School District." As can be seen above, these requests track almost word-for-word the findings of ALJ Proesch.

4

The School objected to each of the six disputed requests for admissions as follows:

> This request is objected to on the basis that the truancy mediation process was a confidential process and both parties are bound by Iowa Code Chapter § 679C.

Defendant's Responses to Plaintiffs' Request for Admissions at 3-5 (docket number 11-3 at 3-5).[2]

## IV. DISCUSSION

Iowa's compulsory education requirements are found at Iowa Code Chapter 299. Any child who fails to attend school as required by Chapter 299 is deemed to be a "truant." *See* § 299.8. If a child is truant, school officials must "attempt to find the cause for the child's absence and use every means available to the school to assure that the child does attend." If a parent or child refuses to accept the school's attempt to assure the child's attendance, or if the school's attempt to assure the child's attendance is otherwise unsuccessful, then the matter must be referred to the county attorney for mediation or prosecution. *Id.* If the matter is referred for mediation, then the county attorney must notify the parent and "designate a person to serve as mediator in the matter." The mediator then contacts the school and parent and arranges meetings "for discussion of the child's nonattendance." *Id.*

The parties apparently agree that the meeting on May 22, 2014 and the meeting in July 2014 were held pursuant to the mediation requirement of § 299.5A. The parties also agree that Iowa Chapter 679C, known as the Uniform Mediation Act, is applicable to the mediation sessions held between the Nelsons and the School. *See* Iowa Code § 679C.103(1)(a) (stating that Chapter 679C applies to a mediation that occurs when "[t]he mediation parties are required to mediate by statute").

---

[2] In response to Request for Admission No. 18, the School added: "Without waiving this objection, deny."

5

Chapter 679C provides generally that mediation communications are privileged. A "mediation communication" is defined as "a statement, whether oral or in a record, verbal or nonverbal, that occurs during a mediation. . . ." § 679C.102(2). Subject to certain exceptions found in § 679C.106, "a mediation communication is privileged . . . and is not subject to discovery or admissible in evidence in a proceeding unless the privilege is waived or precluded as provided by section 679C.105." *See* 679C.104(1). Specifically, "[a] mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication." § 679C.104(2)(a).

Accordingly, statements made by school officials during a mediation hearing are privileged and not subject to discovery or admissible in evidence, unless waived under § 679C.105 or excepted under § 679C.106. The Nelsons argue the privilege found in § 679C.104 was waived by the School when it failed to object to the introduction of such evidence at the hearing before the administrative law judge. Section 679C.105(1) states that the privilege may be waived "if it is expressly waived by all mediation parties." The School argues that failing to object in a different proceeding does not constitute an *express* waiver, as required by § 679C.105(1).

The Nelsons argue that the School waived the privilege when it failed to object at the hearing before ALJ Proesch regarding the substance of the mediation meetings. According to the Nelsons, the School waived the privilege again when it failed to object to ALJ Proesch's references to the mediation meetings in her proposed order. That is, the Nelsons argue the School "did absolutely nothing to protect the privilege."[3] Section 679C.105(1) provides, however, that the privilege is waived "if it is *expressly waived* by all mediation parties." (emphasis added) Absent citation to any other authority, the Court concludes that "failing to object" is not the same as "expressly waiving." Accordingly, I find no waiver here.

---

[3] The Nelsons' brief (docket number 11-1) at 5.

Alternatively, the Nelsons argue that an exception to the general rule that mediation communications are privileged, as found in § 679C.104, applies here because the facts were published in ALJ Proesch's "proposed decision," which according to the Nelsons was subsequently adopted by the Iowa Board of Education and is found on its website. "No privilege exists under section 679C.104 for a mediation communication" if that communication "is available to the public under chapter 22. . . ." Iowa Code § 679C.106(1)(b).[4]

In support of their argument, the Nelsons point out that the decision of the Iowa Board of Education, which references the substance of the mediation meetings, is "available to the public under chapter 22." What is available to the public, however, is ALJ Proesch's *description* of the testimony regarding the substance of the mediation meetings. The "mediation communication" itself is apparently not part of the public record. While it may be a fine distinction, I believe it is one required by the statute. That is, the statements made by the parties at the mediation meetings are not excepted under § 679C.106 merely because ALJ Proesch decided to describe her understanding of the statements in her proposed order.

Accordingly, the Court will not require the School to supplement its responses to the six disputed requests for admissions. In my view, however, that does not fully resolve the issue. In a generic mediation session, the parties attempt to settle a pending dispute. Section 679C.106 states the familiar rule that a mediation communication is privileged "and is not subject to discovery *or admissible in evidence* in a proceeding." (emphasis added) This case, however, is different. The Nelsons allege in their complaint that the School "failed to make reasonable accommodations" to C.N. It would seem that discussions between the parties, even if they take place in the context of "mediation," are relevant, and perhaps indispensable, to the Nelsons' allegations and the School's defenses.

---

[4] Iowa Code § 679C.108 also provides generally that mediation communications are confidential, "[u]nless subject to Chapter 21 or 22."

7

That is, in the context of an accommodation claim, it would seem that the general confidentiality rule applying to mediation would be inapplicable. Neither party briefed that issue, however, and the Court makes no judgment in that regard.

## V. ORDER

**IT IS THEREFORE ORDERED** that the Motion (docket number 11) filed by the Plaintiffs is **DENIED**.

DATED this 22nd day of August, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA